UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| MARY D. HOLMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number: 4:20-cv-00606-JHE |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Mary D. Holmes ("Holmes") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Holmes timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

On April 11, 2017, Holmes protectively filed an application for a period of disability and DIB, alleging an onset date of March 9, 2016. (Tr. 177-78). The State Agency denied her application on May 11, 2017. (Tr. 95). Thereafter, Holmes requested a hearing before an Administrative Law Judge ("ALJ") (tr. 134-39), and on April 1, 2019, Holmes appeared and

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 8).

testified at the hearing (tr. 28-84). On April 17, 2019, the ALJ found Holmes not disabled and issued an unfavorable decision. (Tr. 15-23). Holmes sought review by the Appeals Council, but it declined her request on March 17, 2020. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On April 30, 2020, Holmes initiated this action. (*See* doc. 1).

Holmes was thirty-two years old on the alleged disability onset date. (Tr. 22, 177). She has past relevant work experience as a customer service representative and as a server. (Tr. 22, 205). Holmes alleges her ability to work is limited by multiple sclerosis, migraines, insomnia, and anxiety. (Tr. 216).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

>   (5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Holmes meets the insured status requirements of the Social Security Act through March 31, 2022, and that Holmes has not engaged in substantial gainful activity since March 9, 2016, the alleged onset date. (Tr. 17). At Step Two, the ALJ found Holmes has the following severe impairments: multiple sclerosis and migraine headaches. (*Id.*). At Step Three, the ALJ found Holmes did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19).

Before proceeding to Step Four, the ALJ determined Holmes's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Holmes has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), except she can lift and/or carry 20 pounds occasionally and 10 pounds

frequently. She can stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday. She can sit (with normal breaks) for a total of 7 hours in an 8-hour workday. She can push/pull 20 pounds occasionally and 10 pounds frequently. She can climb ramps and stairs occasionally and never climb ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She should avoid extreme cold and extreme heat. She should avoid concentrated exposure to humidity, vibration, fumes, odors, dusts, and gases. She should avoid concentrated exposure to poor ventilation. She should avoid all exposure to hazards such as unguarded machinery and unprotected heights. (Tr. 19-22).

At Step Four, the ALJ determined Holmes is capable of performing her past relevant work as a customer service representative and a server because they do not require the performance of work-related activities precluded by Holmes's RFC. (Tr. 22). The ALJ also made an alternative Step Five finding, that, based on Holmes's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Holmes could perform. (Tr. 22-23). Therefore, the ALJ determined Holmes has not been under a disability from March 9, 2016 through the date of the decision and denied Holmes's claim. (Tr. 23).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Holmes failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Holmes challenges the Commissioner's decision, asserting three specific "errors of law:" (1) the ALJ failed to evaluate Holmes pursuant to Listing 11.09, (2) the finding that Holmes can perform past relevant work is not supported by substantial evidence and is not in accordance with proper legal standards, and (3) the denial of benefits is not supported by substantial evidence. (Doc. 9 at 2). Additionally, Holmes has separately moved to remand this case to the Appeals Council for it to consider "new evidence" pursuant to Sentence Six. (Doc. 10).

### A. The ALJ Evaluated Holmes Pursuant Listing 11.09 – Multiple Sclerosis

Holmes contends "the ALJ failed to evaluate the evidence pursuant to Listing 11.09 Multiple [S]clerosis. (Doc. 9 at 19). Specifically, Holmes asserts that the records from Dr. Christopher LaGanke, Holmes's treating neurologist, as well as Holmes's testimony required the ALJ to analyze the evidence using Listing 11.09. (Doc. 9 at 19, 25). The record shows this is precisely what the ALJ did. (Tr. 18-19).

At Step Three of the sequential evaluation, the ALJ found Holmes did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (the Listing of Impairments). (Tr. 18). Specifically, the ALJ found Holmes "does not meet or equal Listing 11.09 for multiple sclerosis." (*Id.*).

> To "meet" a Listing, a claimant must have a diagnosis included in the Listing and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings."

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); *see* 20 C.F.R. §§ 404.1525, 404.1526. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified

medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar impairment." *Id.* at 531. "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.*

    Listing 11.09 Multiple Sclerosis, is characterized by A or B, as follows:

A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities.

OR

B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
    1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
    2. Interacting with others (see 11.00G2b(ii)); or
    3. Concentrating, persisting, or manifesting pace (see 11.00G3b(iii)); or
    4. Adapting or managing oneself (see 11.00G3b(iv)).

Although she summarizes medical records and hearing testimony (doc. 9 at 19-28), Holmes fails to explain or argue (much less prove) how her impairment or combination of impairments meets or equals Listing 11.09.

In finding Holmes does not meet or equal Listing 11.09, the ALJ found that there was "no evidence in the record that [Holmes] has disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." (Tr. 18-19). This is the ALJ's express finding

that Holmes did not meet or equal paragraph A of Listing 11.09.[4] The ALJ reviewed treatment records from Dr. Christopher LaGanke, Holmes' neurologist, for migraine headaches and multiple sclerosis. (Tr. 19-20, 281-82, 289-90, 292-93, 297-98, 307-08, 311, 318, 324, 372). Objective medical evidence supports the ALJ's determination that Holmes does not satisfy paragraph A. Specifically, motor examinations revealed normal tone and strength in all four extremities; sensation was normal to pinprick, light touch, vibration, and proprioception in all four extremities except for decreased vibration in the knees; and normal casual gait and coordination. (Tr. 281-82, 289-90, 292-93, 297-98, 307-08, 311, 318, 324, 372).

As to paragraph B, the ALJ found Holmes's motor examinations were mostly normal (as described above), and specifically considered Holmes's mental limitations at Step Two. (Tr. 17-18). The ALJ found Holmes had only mild limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, and maintaining pace. (Tr. 18). The ALJ found no limitation in adapting or managing oneself. (*Id.*). The ALJ's findings are supported by substantial record evidence. Dr. LaGanke's records show that Holmes recent and remote recall were intact and she was alert and oriented to person, place and time, and her fund of knowledge was good. (Tr. 281-82, 289-90, 292-93, 297-98, 307-08, 311, 318, 324, 372). Holmes fails to point to a marked limitation in physical or mental functioning to support an assertion that she meets or equals paragraph B. Holmes fails to meet her burden to prove she meets of equals Listing 11.09.

---

[4] Holmes's argument that the Commissioner presents a *post hoc* argument that she did not prove eligibility pursuant to Listing 11.09 (doc. 13 at 2-7) is without merit. The ALJ made this finding and articulated his reasoning in the decision. (Tr. 17-22).

### B. The Vocational Expert's Testimony Supports the Determination that Holmes Could Perform Her Past Relevant Work

Holmes contends the ALJ's determination that she can perform her past work is not supported by substantial evidence and that the determination is not in accordance with proper legal standards. (Doc. 9 at 28). Specifically, Holmes asserts the ALJ "ignored" her medical treatment for MS and her testimony, and that the ALJ failed to consider all of the duties of her past work. (*Id.*).

After assessing Holmes's RFC, the ALJ made the Step Four determination that Holmes is capable of performing her past relevant work as a customer service representative and as a server (as she actually performed the jobs as generally performed in the national economy) because this work does not require the performance of work-related activities precluded by Holmes's RFC. (Tr. 22-23). A claimant bears the burden of proving she could not perform her past relevant work either (1) as she performed the work or (2) as the work is generally performed in the national economy. *See Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986). "The regulations require that the claimant not be able to perform his past *kind* of work, not that he merely be unable to perform a specific job he held in the past." *Id.* at 1293 (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)).

In support of this Step Four conclusion, the ALJ cited the *Dictionary of Occupational Titles* (DOT) occupational title and number provided by the vocational expert ("VE") as evidence regarding the demands of Holmes's prior work. (Tr. 22, 79). This was proper, as an ALJ may rely on a VE's testimony and the DOT to determine the demands of a claimant's prior work as the work is generally performed in the national economy. *See* 20 C.F.R. §404.1560(b)(2); SSR 82-61, 1982 WL 31387; *Scott v. Comm'r of Soc. Sec.*, 440 F. Appx. 726, 728 (11th Cir. 2011). Additionally, the VE testified she had reviewed Holmes's work history records and heard Holmes's testimony

9

regarding her past work as actually performed.[5] (Tr. 78, 205-12). The VE's testimony is substantial evidence to support the ALJ's determination Holmes could perform her past relevant work.[6]

Notably, even though the ALJ found Holmes could perform her past work at Step Four, the ALJ made an alternative Step Five determination. (Tr. 22-23). Generally, when a claimant proves she cannot perform her past relevant work, the ALJ must produce evidence that other work exists that the claimant could perform given her RFC and vocational factors. *See* 20 C.F.R. § 404.1560(c)(2). Here, as an alternative Step Five determination, the ALJ found that Holmes could perform other jobs within the national economy (tr. 22-23), and Holmes makes no argument that she could not perform these jobs. Thus, even if Holmes could prove that she could not perform her past relevant work, it would not mean that she is disabled, only that the analysis should proceed to Step Five.

### C. The ALJ's Hypothetical Question to the Vocational Expert

Holmes next argues the ALJ's hypothetical question to the VE should have included her impairments of multiple sclerosis and migraine headaches. (Doc. 9 at 35-36). An ALJ is not required to include references to diagnoses or impairments in the hypothetical questions. A hypothetical question only needs to include the claimant's functional limitations that are supported by the record. *See England v. Astrue*, 490 F.3d 1017, 1023 (8th Cir. 2007). The VE is not a medical expert. Thus, the inclusion of diagnoses or impairments in the hypothetical question

---

[5] Holmes's attorney at the hearing did not contest the VE's testimony regarding her past relevant work. (Tr. 78-79).

[6] At times, in the subsections about performing past work, Holmes references the ALJ's RFC determination. (Doc. 9 & 29 & doc. 13 at 7). However, issues raised in a perfunctory manner without elaboration are generally considered waived. *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006). Holmes does not make a specific or development argument to undermine the ALJ's RFC determination.

would not assist the VE in determining whether a claimant could perform her past relevant work.

Here, the ALJ obtained testimony from the VE to help determine if Holmes could perform other work. *See* 20 C.F.R. § 404.1566(e). That is sufficient evidence that the ALJ properly relied on to conclude Holmes could perform other work.[7]

### D.  Holmes's Motion to Remand to Appeals Council

Separately from her brief in support of disability, Holmes moves for remand to the Appeals Council to consider "new" evidence. (Doc. 10). Specifically, Holmes requests the action be remanded based on a Listing Form completed by Dr. LaGranke, Holmes's neurologist, on December 18, 2020. (*Id.* at 1). Holmes now contends this evidence "confirms . . . Holmes meets Listing 11.09 C with an onset of [April 1, 2016]." (*Id.*)

Evidence submitted to the district court may be considered only to determine whether additional evidence satisfies the criteria for remand pursuant to sentence six of 42 U.S.C. § 405(g). *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). To satisfy the criteria for this type of remand, a plaintiff must establish that (1) the evidence is new and noncumulative; (2) the evidence

---

[7] Holmes argues "[t]here is no medical evidence that [Holmes] can work" and that the VE's testimony is not sufficient evidence "because the hypothetical question does not fully state [Holmes's] impairments and limitations. (Doc. 13 at 14). A generous reading of Holmes's briefs leads the undersigned to believe that she may be attempting to challenge the ALJ's RFC determination that she could perform a limited range of light work. However, Holmes never actually explains *how* she thinks the ALJ failed to account for her impairments and limitations in her RFC. In assessing her RFC, the ALJ reviewed records from Holmes' neurologist, Dr. LaGanke, who she saw for migraine headaches and multiple sclerosis. (Tr. 19-21). The ALJ noted the mostly normal physical findings described above and that her brain MRIs (which showed scattered areas of cerebral white matter, but no active lesions) remained stable. (*Id.*). The ALJ also noted Dr. LaGanke never recommended any restrictions and never observed any muscle atrophy, which would be expected from lack of use to avoid pain. (Tr. 20). Additionally, the ALJ reviewed Holmes's treatment for migraine headaches, highlighting records where Holmes reported her treatment was working well in November 2018, and that she did not return for treatment. (Tr. 21). There is substantial evidence to support the ALJ's RFC determination, and Holmes has pointed to no error.

11

is material such that a reasonable probability exists that it would change the administrative result; and (3) there was good cause for the failure to submit the evidence at the administrative level. *Id.*

The Listing Form Dr. LaGanke submitted contains an outdated Listing. (*See* doc. 10-1). On this outdated Listing, Dr. LaGanke marked paragraph C, which states as follows:

> Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, shown on physical examination, that results from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

(Doc. 10-1 at 3). As stated above, the applicable version of Listing 11.09 does not contain a paragraph C. Additionally, there is no other information on the Listing Form to support this conclusion or how it would apply to the applicable Listing's paragraphs A or B. Thus, this information does not create a reasonable probability that it would change the ALJ's decision and is therefore not material. For these reasons, the motion to remand (doc. 10) is **DENIED**.

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Holmes's claim for a period of disability and disability insurance benefits is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 16th day of September, 2021.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE